NOT FOR PUBLICATION                          [Dkt. No. 6, 11]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

---

|  |  |
|---|---|
| Ahmed Mohamed Aboudekika, | : |
|  | : Civil No. 10-5830 |
|     Plaintiff, | : |
|  | : |
|        v. | : |
|  | :   **OPINION** |
| Delaware River and Bay | : |
| Authority, James Gillespie et | : |
| al., | : |
|  | : |
|     Defendants. | : |
|  | : |

---

Appearances:

    Joseph C. Grassi, Esquire
    James E. Moore, Esquire
    Barry, Corrado, Grassi & Gibson, P.C.
    2700 Pacific Avenue
    Wildwood, NJ 08260
        Attorneys for Plaintiff

    William M. Tambussi, Esquire
    William F. Cook, Esquire
    Eric D. Milavsky, Esquire
    Brown & Connery LLP
    360 Haddon Avenue
    Westmont, NJ 08108
        Attorneys for Defendants


**Bumb**, United States District Judge.

1

This matter comes before the Court upon two motions:  (1) the motion to dismiss, or in the alternative for summary judgment pursuant to Rule 12(d), by Defendants Delaware Bay River and Bay Authority ("DRBA") and James Gillespie, Plaintiff's supervisor at the DRBA [Dkt. Ent. 6] and (2) a motion for leave to amend the complaint filed by Plaintiff Ahmed Mohamed Aboudekika ("Plaintiff") [Dkt. Ent. 11].  For the following reasons, Defendants' motion to dismiss, or in the alternative for summary judgment, is granted, in part, denied, in part, and reserved, in part.  Plaintiff's motion to amend is granted, in part, and denied, in part.

## I. BACKGROUND[1]

In July 2009, the DRBA hired Plaintiff, a Moslem[2] man of Egyptian descent, as a "wiper" on board the vessels of the Cape May-Lewes Ferry.  First Amended Complaint ("FAC") ¶¶ 2, 6. Plaintiff's responsibilities included working with the ship's engineers to ensure the proper operation and maintenance of the ferry engines.  FAC ¶ 6.  After approximately one month on the

---

[1]     For purposes of Defendants' motion to dismiss, the Court accepts the factual allegations pled in Plaintiff's proposed Amended Complaint as true and construes these allegations in a light most favorable to Plaintiff.  See Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

[2]     The Court adopts the spelling used by Plaintiff.

job, Plaintiff's co-workers subjected him to "racial slurs and commentary." FAC ¶ 7. Specifically, co-workers told Plaintiff that his job should not have gone to a "minority," that he took work away from qualified "American" workers, and that "they couldn't believe they had to work with a minority worker such as Plaintiff." FAC ¶ 8. Plaintiff reported the harassment to his supervisor, James Gillespie. FAC ¶ 9. Gillespie promised to investigate the matter, and report back to Plaintiff, but no investigation took place. FAC ¶¶ 9-11.

On October 9, 2009, the DRBA terminated Plaintiff's employment, ostensibly for "lack of work." FAC ¶ 12. At the time of termination, Gillespie told Plaintiff that he was "more than welcome" to return to employment the following year. FAC ¶ 14. In March 2010, the DRBA sent Plaintiff an application for re-employment. FAC ¶ 15. However, the DRBA did not respond to Plaintiff's application and instead hired a replacement for Plaintiff's position. FAC ¶ 16.

On October 15, 2010, Plaintiff filed suit, stating claims pursuant to 42 U.S.C. § 1981 and § 1983 and alleging violations the New Jersey Constitution and New Jersey's Law Against Discrimination. Dkt. Ent. 1. Defendants removed the matter to this Court and now move to dismiss or, in the alternative, for

summary judgment.[3]

---

[3]     If the Court chooses to convert the motion to one for
summary judgment, Defendants seek to introduce the following:

    The busiest season for the Cape May-Lewes Ferry is between
March and October; during this period, DRBA hires "seasonal"
employees.  Polak Certif. at ¶¶ 3-4.  "A 'seasonal' employee
works during the busy season and is then separated at the end of
the season."  Id. at ¶ 4.   By contrast, "[a]'casual' employee
works some hours during each month of the year and generally is
not separated."  Id.   Casual employees are limited to working,
although not guaranteed to work, 1000 hours in a calendar year.
Id.  DRBA hires seasonal and casual employees in late spring to
fill schedule gaps after DRBA assigns permanent employees
according to union bid.  Id. at ¶ 5.  Plaintiff does not identify
himself as a seasonal or causal employee in his proposed Amended
Complaint.
    When DRBA received Plaintiff's application for employment in
2009, Plaintiff did not have the required credentials for the
position, namely a Merchant Mariner Credential ("MMC") and a
Transportation Worker Identification Credential ("TWIC").  Id. at
¶¶ 6, 9.  DRBA encouraged Plaintiff to obtain these credentials,
which Plaintiff subsequently did.  Id. at ¶¶ 9-10.  But by the
time DRBA interviewed Plaintiff, reviewed his application and
completed a background check, it was late June and there were no
seasonal or casual positions available.  Id. at ¶¶ 10-11.  DRBA
placed Plaintiff on the "call-in list."  Id. at ¶ 11.
    As part of the hiring process, on July 1, 2009, Plaintiff
signed an acknowledgment that he was not working under an
employment contract:

        My signature below acknowledges that I have read and
        understand that I have applied for a Seasonal/Casual
        position with the Delaware River & Bay Authority, and in
        doing so understand as a O.S./Wiper (Position) in the Marine
        (Department), I am limited to work up to a maximum of 1,000
        hours during any calendar year.  I fully understand that I
        am an employee at will, and have no right to, or expectation
        of, continued employment with the Delaware River Bay
        Authority.  I also fully understand that there is no
        expectation that this Seasonal/Casual position may lead to
        full-time permanent status.

Dkt. Ent. 1, 6.  Plaintiff cross moves to amend.  Dkt. Ent. 11.

**II. STANDARD**

"To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to state a claim to

---

Id. at Ex. A.
     Defendants further seek to introduce testimony from
Plaintiff's unemployment benefits hearing.  See Def. Ex. 2-3.  At
the hearing, Plaintiff testified that DRBA offered him seasonal
employment in July, but by September, he was the only employee
told that there was no more work.  Def. Ex. 3 at p. 9.  DRBA
initially told Plaintiff to expect to work "[f]our to six months"
Id.  Plaintiff testified as follows regarding his last day
working for DRBA:

     [Hearing Officer]:  Let me just ask you.  Did you work the
     full day on October 9th?

     [Plaintiff]:  No on October 9th, I went to the office to Mr.
     Gillespie and I was have a virus.  [sic.]  I was so sick and
     I never called out of my work actually, because I am a very
     responsible person and I asked him, he told me that he would
     not talk to you.

     [Plaintiff]:  I say yes sir, you told me this is your last
     week and tomorrow is going to be your last day so and you're
     more than welcome to come back in the summertime.

     [Hearing Officer]:  Okay.  So you're saying you left sick
     that day?

     [Plaintiff]:  Yes.

Id. at p. 17-18.
     Plaintiff submitted an exhibit demonstrating that the New
Jersey Department of Labor denied him unemployment benefits
because he "left his job voluntarily because [he] felt [his]
supervisor's criticism of [his] job performance was unduly
severe."  Pl. Ex. 2.  Plaintiff also submitted a copy of his
"2010 Previously Employed Application."  Pl. Ex. 3.

5

relief that is plausible on its face." Sheridan v. NGK Metals
Corp., 609 F.3d 239, 263 n. 27 (3d Cir. 2010) (quoting Ashcroft
v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009) (internal
quotation marks omitted)).  "A claim has facial plausibility when
the plaintiff pleads factual content that allows the court to
draw the reasonable inference that the defendant is liable for
the misconduct alleged."  Id. (quoting Iqbal, 129 S.Ct. at
1949).

    The Court conducts a three-part analysis when reviewing a
claim:

> First, the court must "tak[e] note of the elements a
> plaintiff must plead to state a claim." Iqbal, 129 S.Ct. at
> 1947.  Second, the court should identify allegations that,
> "because they are no more than conclusions are not entitled
> to the assumption of truth." Id. at 1950.  Finally, "where
> there are well-pleaded factual allegations, a court should
> assume their veracity and then determine whether they
> plausibly give rise to an entitlement for relief." Id.

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010);
see also Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir.
2009)("...[A] complaint must do more than allege the plaintiff's
entitlement to relief.  A complaint has to "show" such an
entitlement with its facts.").

    Pursuant to Rule 12(d), "if, on a motion under Rule 12(b)(6)
..., matters outside the pleadings are presented to and not
excluded by the court, the motion must be treated as one for

6

summary judgment under Rule 56," provided that "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).

"An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  "If the non-moving party bears the burden of persuasion at trial, 'the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden.'"  Id. (quoting Wetzel v. Tucker, 139 F.3d 380, 383 n.2 (3d Cir. 1998)).  Upon such a showing, the burden shifts to the non-moving party to produce evidence of a genuine, factual dispute.  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The non-movant's burden is rigorous:  it "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture and speculation will

not defeat summary judgment.  <u>Orsatti v. N.J. State Police</u>, 71
F.3d 480, 484 (3d Cir. 1995).

     When considering a summary judgment motion, the Court does
not weigh evidence; rather, all reasonable "inferences, doubts,
and issues of credibility should be resolved against the moving
party." <u>Meyer v. Riegel Products Corp.</u>, 720 F.2d 303, 307 n.2
(3d Cir. 1983).  However, "a mere scintilla of evidence," without
more, will not give rise to a genuine issue for trial.  <u>Anderson</u>,
477 U.S. at 252.  Summary judgment is still appropriate "where
the record ... could not lead a rational trier of fact to find
for the nonmoving party ...." <u>Matsushita Elec. Industrial Co. v.
Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  "Summary judgment
motions thus require judges to 'assess how one-sided evidence is,
or what a 'fair-minded' jury could 'reasonably' decide....'"
<u>Williams v. Borough of West Chester, Pa.</u>, 891 F.2d 458, 460 (3d
Cir. 1989) (quoting <u>Anderson</u>, 477 U.S. at 265 (Brennan, J.
dissenting)).

**III. ANALYSIS**

     "Bi-state entities ... are intended to address 'interests
and problems that do not coincide nicely ... with State lines.'"
<u>Int'l Union of Operating Eng'rs, Local 542 v. Delaware River
Joint Toll Bridge Comm'n ("Local 542")</u>, 311 F.3d 273, 275-76 (3d
Cir. 2002)(quoting <u>Hess v. Port Auth. Trans-Hudson Corp.</u>, 513

U.S. 30, 40 (1994)).  Courts regard these entities "not as extensions of each compacting state's authority, but rather as 'independently functioning parts of a regional polity and of a national union.'"  Id. at 276 (quoting Grad, <u>Federal-State Compact: A New Experiment in Cooperative Federalism</u>, 63 Colum. L.Rev. 825, 854-55 (1963)).  Thus, by entering into a compact, each state "surrender[s] a portion of their sovereignty over certain ... operations in order to better serve the regional interest."  Id.  "Such a surrender of state sovereignty should be treated with great care, and the Supreme Court has stated that courts should not find a surrender unless it has been 'expressed in terms too plain to be mistaken.'"  Id. (quoting <u>Jefferson Branch Bank v. Skelly</u>, 66 U.S. (1 Black) 436, 446, 17 L.Ed. 173 (1861)).

The Court must determine whether Plaintiff's claims may proceed in light of DRBA's unique status as a bi-state entity.[4]

## A. New Jersey Law Against Discrimination

Defendants argue that Counts One and Two of Plaintiff's proposed Amended Complaint must fail because New Jersey's Law

---

[4]   Given that Plaintiff responded to Defendants' motion to dismiss by filing an Amended Complaint, the Court considers the viability of the claims pled in the amended pleading.  As directed by Fed.R.Civ.P. 15(a)(2), the Court "freely give[s] leave [to amend] when justice so requires."

Against Discrimination ("LAD") does not apply to the DRBA.  See Spence-Parker v. Delaware River & Bay Auth., 616 F.Supp. 2d 509, 520-21 (D.N.J. 2009) (holding LAD inapplicable to the DRBA). Plaintiff rejects the holding in Spence-Parker and argues for application of the "complementary or parallel" standard, i.e., "finding the passage of similar legislation by compacting states to ... be sufficient to imply an intent on the part of both states to apply the legislation to a bi-state entity." Local 542, 311 F.3d at 277.  The Third Circuit, however, specifically rejected this standard in Local 542:  "the New Jersey complementary or parallel standard appears to be based on a misinterpretation of compact law."  Id. at 280.

Rather, to determine whether Plaintiff's claims may proceed, as acknowledged in Spence-Parker, "the Court's 'first and last order of business is interpreting the compact.'"  616 F.Supp.2d at 518 (quoting Local 542, 311 F.3d at 280 (internal quotations and citations omitted)).  The DRBA Compact does not expressly state that New Jersey or Delaware's antidiscrimination laws apply to DRBA.  Rather, to support his proposition that LAD applies to DRBA, Plaintiff points to Article VIII of the Compact, which states:

> For the purpose of effectuating the authorized purposes of the authority, additional powers may be granted to the authority by legislation of either state without the

10

concurrence of the other, and may be exercised within such state, or may be granted to the authority by Congress and exercised by it; but no additional duties or obligations shall be undertaken by the authority under the law of either state or of Congress without authorization by the law of both states.

N.J.S.A. 32:11E-1.

The relevant phrase here is that "no additional duties or obligations shall be undertaken by the authority under the law of either State or of Congress without authorization by the law of both States." Id. (emphasis added).  In other words, absent express authorization by New Jersey and Delaware, no new obligations may be imposed on DRBA through only one compacting state's legislation.  Unlike other interstate compacts, the DRBA Compact may not be amended by passing legislation in one state that is "concurred in" by the other state.[5]  See Spence-Parker, 616 F.Supp.2d at 519-20; see also Chafin v. Delaware River and Bay Auth., No. 06-836, 2006 WL 3780765, at *6 (D.N.J. Dec. 20,

_____

[5]    Although Plaintiff purports to rely on this Court's decision in Chafin v. Delaware River & Bay Authority, which noted several differences between the compact at issue in Local 542 and the DRBA Compact, Chafin presented the Court with very different issues than that which the Court resolves today.  See No. 06-836, 2006 WL 3780765 (D.N.J. Dec. 20, 2006).  In Chafin, this Court held that a plaintiff could assert certain common law, as opposed to statutory, claims against DRBA.  Id. at *1.  Thus, although the Court questioned "[w]hether complimentary and parallel law in both member states is sufficient authorization under Article VIII" to permit statutory claims against DRBA, the Court ultimately considered that "Local 542 suggests that such legislation would be insufficient." Id. at *6.

2006) ("Article VIII's plain language speaks of authorizing legislation, not concurrent legislation.  To authorize is a more express approval than to concur.").

Nor does Plaintiff find help in Article XV of the DRBA Compact.  Article XV, titled "Review and Enforcement of Rules," permits:

> Judicial proceedings to review any bylaw, rule, regulation, order or other action of the authority or to determine the meaning or effect thereof, may be brought in such court of each state, and pursuant to such law or rules thereof, as a similar proceeding with respect to any agency of such state might be brought.
>
> Each state may provide by law what penalty or penalties shall be imposed for violation of any lawful rule, regulation or order of the authority, and, by law or rule of court, for the manner of enforcing the same.

N.J.S.A. 32:11E-1.  Thus, although Article XV does permit certain judicial actions, it does so only with respect to "[j]udicial proceedings to review any bylaw, rule, regulation, order or other action of the authority or to determine the meaning or effect thereof," and not with respect to a state statutory claim.  Id. Plaintiff correctly notes that LAD is remedial legislation intended to be broadly construed, see Nini v. Mercer County Community College, 202 N.J. 98, 115 (2010), but simply fails to establish that New Jersey and Delaware authorized LAD to apply to DRBA.

12

Like the Court in <u>Spence-Parker</u>, this Court concludes that, "[n]othing in the language of the Compact suggests that New Jersey and Delaware intended for the NJLAD or [Delaware's Discrimination in Employment Act (the "DDEA")] apply to the DRBA, and neither of the states' antidiscrimination laws appears to mention the DRBA."[6]  616 F.Supp.2d at 521.  Thus, Counts One and Two of Plaintiff's proposed Amended Complaint fail as a matter of law.[7]

**B.  New Jersey Constitutional Claim**

Count Three of Plaintiff's proposed Amended Complaint states a claim pursuant to New Jersey's Civil Rights Act ("CRA"), N.J.S.A. 10:6-2, alleging a violation of Article I, paragraphs 1 and 5 of the New Jersey Constitution.[8]  Defendants argue that

---

[6]   Indeed, as Defendants point out, although advocating for application of the "complementary and parallel" test in his opposition, Plaintiff undertook no comparison of New Jersey and Delaware's antidiscrimination laws in his brief.

[7]   Because the Court finds that LAD does not apply to DRBA, the Court need not address Defendants' argument that Plaintiff cannot establish a prima facie case of discrimination or retaliation.

[8]   Article 1, paragraph 1 of New Jersey's Constitution states:

All persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing, and protecting property, and of pursuing and obtaining safety and happiness.

Article 1, paragraph 5 states:

nothing in the DRBA Compact expresses any intent that the entity be liable for violations of New Jersey's Constitution.

First, although not addressed by the parties, the Court notes that for the same reasons that LAD would not apply to DRBA, it appears that the CRA would also not apply.  Nothing in the DRBA Compact evidences an express intent that the CRA apply to the DRBA.  Nor does it appear that Delaware and New Jersey enacted legislation expressly authorizing application of the CRA. The Court further notes, however, that some New Jersey courts have held that an implied right of action exists under the New Jersey Constitution for employment discrimination.  See, e.g., Hyman v. Atlantic City Med. Ctr., Civ. No. 97-795, 1998 WL 135249, at *9 (D.N.J. Mar. 16, 1998)(collecting cases recognizing private right of action for employment discrimination under Article 1, ¶¶ 1, 5 of the New Jersey Constitution); but see Drinkwater v. Union Carbide Corp., 904 F.2d 853, 864 (3d Cir. 1990)("Despite our reservations about whether the New Jersey constitution contains a private right of action for a retaliation claim under N.J.S.A. 10:5-12(d), the parties apparently conceded

_____

> No person shall be denied the enjoyment of any civil or military right, nor be discriminated against in the exercise of any civil or military right, nor be segregated in the militia or in the public schools, because of religious principles, race, color, ancestry or national origin.

this point in the district court and the issue has not been briefed before us."); Drinkwater v. Union Carbide Corp., Civ. No. 86-430, 1991 WL 34888, at *5 (D.N.J. Feb. 1, 1991) ("the court predicts that a New Jersey court would not imply a constitutional right against retaliation in the implicit equal protection clause of its constitution.").

Defendants argue that Plaintiff's state constitutional claim against DRBA fails as a matter of law because the DRBA Compact evidences no express intent authorizing such a constitutional claim.  In support of this analysis, Defendants cite only Local 542.  But Local 542 involved statutory claims, not a state constitutional claim.  Moreover, it appears that New Jersey's Constitution, enacted in 1947, predates the DRBA Compact.  Thus, the New Jersey Constitution could not be seen as imposing any "additional duties or obligations" on DRBA.  See N.J.S.A. 32:11E-1, Article VIII.  And finally, Article VII of the Compact empowers DRBA to "[t]o exercise all other powers not inconsistent with the Constitutions of the two states or of the United States, which may be reasonably necessary or incidental to the effectuation of its authorized purposes...."  Id. (emphasis added).

The Court recognizes that "[a] bi-state entity, created by compact, is 'not subject to the unilateral control of any one of

15

the States that compose the federal system.'" <u>Local 542</u>, 311
F.3d at 281 (citing <u>Hess</u>, 513 U.S. at 42).  But Defendants have
not clearly established, at least at this early juncture, and on
this limited briefing, that Plaintiff's New Jersey constitutional
claim must fail as a matter of law.

Defendants argue, even if Plaintiff's constitutional claim
is permissible, the Court should convert the motion to dismiss to
one for summary judgment and grant judgment in Defendants' favor
because Plaintiff cannot establish that his discharge was in
retaliation for reporting racial harassment in light of testimony
he proffered at an unemployment benefits hearing.  The Court
declines to convert the motion and, regardless, does not find
this argument dispositive of Plaintiff's claim.

Plaintiff's proposed Amended Complaint alleges:

9.    Plaintiff verbally informed his supervisor, James
      Gillespie, about the ongoing racial harassment.

. . .

12.   On October 9, 2009, plaintiff's employment with the
      DRBA was terminated by Gillespie, ostensibly for lack
      of work.

. . .

25.   Plaintiff has a right under the New Jersey Constitution
      to be free from retaliation for exercising his rights
      under the New Jersey Constitution.

. . .

16

26.   The actions of defendants, as described above, violated
      those rights.

Thus, the Court understands Plaintiff to allege that he was

terminated in retaliation for reporting racial harassment.

The New Jersey Department of Labor initially denied

Plaintiff unemployment benefits, finding that Plaintiff "left

[his] job voluntarily because [he] felt [his] supervisor's

criticism of [his] job performance was unduly severe."  Pl. Ex.

2.  Plaintiff appealed, and the Department held a telephone

hearing.  At the hearing, Plaintiff testified that DRBA offered

him seasonal employment in July, but by September, he was the

only employee told that there was no more work.  Def. Ex. 3 at p.

9.  DRBA initially told Plaintiff to expect to work "[f]our to

six months."  Id.  Plaintiff testified as follows regarding his

last day working for DRBA:

     [Hearing Officer]:  Let me just ask you.  Did you work the
     full day on October 9th?

     [Plaintiff]:  No on October 9th, I went to the office to Mr.
     Gillespie and I was have a virus.  [sic.]  I was so sick and
     I never called out of my work actually, because I am a very
     responsible person and I asked him, he told me that he would
     not talk to you.

     [Plaintiff]:  I say yes sir, you told me this is your last
     week and tomorrow is going to be your last day so and you're
     more than welcome to come back in the summertime.

     [Hearing Officer]:  Okay.  So you're saying you left sick
     that day?

[Plaintiff]:  Yes.

<u>Id.</u> at p. 17-18.

Clearly, Plaintiff did not testify about the alleged racial harassment he experienced while working at DRBA at his unemployment benefits hearing.  Plaintiff's testimony does not necessarily preclude a finding of retaliatory discharge, however. The testimony suggests a factual dispute as to whether Plaintiff left his position voluntarily or was told that there was no longer work available.

In sum, the Court concludes that Defendants have failed to meet their burden on this motion to dismiss, as well as for summary judgment were this court to so convert the motion. Defendants have not established that Plaintiff's constitutional claim must fail as a matter of law, at least at this point in the proceedings.

**C.   Section 1983**

Count Four of Plaintiff's Amended Complaint states a claim against DRBA pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State...subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

18

Therefore, to survive a motion to dismiss, a plaintiff must allege two elements:  (1) "the violation of a right secured by the Constitution and laws of the United States" and (2) "that the alleged deprivation was committed by a person acting under color of state law."[9]  <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988).  "As in any action under § 1983, the first step is to identify the exact contours of the underlying right said to have been violated."  <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 842 n. 5 (1998).

DRBA correctly argues that it cannot be held liable for the conduct of its employees under the theory of respondeat superior.  <u>See</u> <u>Montgomery v. De Simone</u>, 159 F.3d 120, 126 (3d Cir. 1998) (citing <u>Monell v. Dep't of Soc. Servs. of City of N.Y.,</u> 436 U.S. 658, 691-94 (1978)) ("Under 42 U.S.C. § 1983, municipal defendants cannot be held liable under a theory of respondeat

---

[9]    DRBA does not dispute that it is a "person" for purposes of Section 1983.  "An agency exercising state power is not a 'person' subject to suit under section 1983 if the agency is entitled to the state's sovereign immunity under the Eleventh Amendment."  <u>Barket, Levy & Fine, Inc. v. St. Louis Thermal Energy Corp.,</u> 948 F.2d 1084, 1086 (8th Cir. 1991) (citing <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 70-71 (1989)).  In <u>Riley v. Delaware River and Bay Authority</u>, the Court determined that DRBA was not entitled to sovereign immunity after applying the factors identified by the Third Circuit in <u>Fitchik v. New Jersey Transit Rail Operations</u>, albeit in the context of a 42 U.S.C. § 1981 claim.  457 F.Supp.2d 505, 514 (D. Del. 2006)(citing 873 F.2d 655, 658 (3d Cir. 1989)).  This Court, applying the same analysis employed in <u>Riley</u>, similarly concludes that DRBA is amenable to suit under Section 1983.

superior; municipal liability only arises when a constitutional deprivation results from an official custom or policy."). Rather, "[u]nder Monell, for municipal liability to attach, any injury must be inflicted by 'execution of a government's policy or custom.'" Santiago, 629 F.3d at 135 (citing 436 U.S. at 694). "'Policy' includes official proclamations made by a municipal decisionmaker with final authority, and 'custom' is defined as "practices of state officials ... so permanent and well settled as to virtually constitute law." Kelly v. Borough of Carlisle, 622 F.3d 248, 263 (3d Cir. 2010)(citing Berg v. County of Allegheny, 219 F.3d 261, 275 (3d Cir. 2000) (internal quotation marks and citation omitted)).

"To prove liability, the plaintiff must show that the municipal action was the 'moving force' behind the constitutional violation." Id. (citing Berg, 219 F.3d at 276).  Where the policy or custom identified by a plaintiff "does not facially violate federal law, causation can be established only by 'demonstrat[ing] that the municipal action was taken with deliberate indifference as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice.'" Id. (quoting Berg, 219 F.3d  at 276).

Plaintiff identifies three bases for entity liability against DRBA:

20

> 25.  Defendant DRBA has a policy and practice of failing to
>      adequately train and/or supervise their employees to
>      prevent employment discrimination, and to protect
>      employees from retaliatory acts in the workplace.
>
> 26.  Defendant DRBA has failed to adopt policies to prevent
>      employment discrimination and retaliation in the
>      workplace.
>
> 27.  Defendant has a policy and practice of failing to
>      protect their employees from retaliation when they
>      exercise their right to report harassing acts
>      perpetrated on them by co-workers.

FAC ¶¶ 25-27.

The Court first considers whether Plaintiff adequately identified a federal right that the DRBA violated through its "policies and practice." Clearly, Plaintiff has not specifically identified such a right in his proposed amended complaint. Dismissal thus appears warranted on this basis alone. Moreover, Plaintiff states in his opposition brief that he "seeks to amend his complaint to properly assert his substantive constitutional claims under § 1983...." Pl. Br. at 13. Given this assertion, the Court cannot ascertain whether Plaintiff intended to assert more than one constitutional claim against DRBA.

Presuming, however, that Plaintiff intended to prosecute his § 1983 claim based on a denial of equal protection, he would need to plead facts sufficient to infer that Plaintiff's deprivation

of Equal Protection[10] is attributable to enforcement of DRBA

policies and practices.  In other words, to state this claim,

Plaintiff would need to plead facts demonstrating (1) that a

constitutional violation occurred and (2) that DRBA is

responsible for the violation, i.e., DRBA "is only liable when it

can be fairly said that [DRBA] itself is the wrongdoer." Collins

v. City of Harker Heights, Tex., 503 U.S. 115, 122 (1992).

DRBA's responsibility for the violation would presumably require

some knowledge of either the violation itself or the risk that

the violation would occur.  See Fletcher v. O'Donnell, 867 F.2d

791, 793-94 (3d Cir. 1989) (citing Pembaur v. City of Cincinnati,

475 U.S. 469, 481-82 n. 10 (1986)) ("Custom may be established by

proof of knowledge and acquiescence.").  Plaintiff's proposed

pleading does not suggest such knowledge on DRBA's part,

particularly in light of the Third Circuit's direction that "[a]

single incident by a lower level employee acting under color of

law, however, does not suffice to establish either an official

policy or a custom."  Id.

    Plaintiff's § 1983 claim against DRBA is dismissed without

prejudice.  Given, however, that the Court reserves decision on

_____

[10]    The Fourteenth Amendment provides that "[n]o state shall ...
deny to any person within its jurisdiction the equal protection
of the laws." U.S. Const. amend. XIV, § 1.

Counts Five, Six and Seven, as set forth below, the Court permits Plaintiff thirty days, beginning from the date the Court resolves Plaintiff's implied contract claims, to file an Amended Complaint.  Beyond this deadline, Plaintiff must seek leave to amend.

**D.   Section 1981**

In Count Five of his proposed Amended Complaint, Plaintiff asserts a claim against Defendant James Gillespie, Plaintiff's supervisor at the DRBA, for violation of 42 U.S.C. § 1981.  The statute states, in relevant part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts," defining the phrase "make and enforce contracts" as "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  Id.  Plaintiff alleges that he had an implied contract for employment with DRBA, that Gillespie subjected Plaintiff to discrimination, and in doing so interfered with Plaintiff's ability to make and enforce his employment contract with DRBA.  See FAC ¶¶ 29-35.

"To establish a right to relief under § 1981, a plaintiff must show (1) that he belongs to a racial minority; (2) 'an intent to discriminate on the basis of race by the defendant; and

23

(3) discrimination concerning one or more of the activities enumerated in' § 1981, including the right to make and enforce contracts." Pryor v. National Collegiate Athletic Ass'n., 288 F.3d 548, 569 (3d Cir. 2002) (quoting Brown v. Philip Morris Inc., 250 F.3d 789, 797 (3d Cir. 2001)).  Defendants argue that Plaintiff's claim must fail because he had no contract with the Defendant Gillespie, as opposed to DRBA (even assuming a contract did exist, see infra).  The Court does not agree.  "A third party incurs Section 1981 liability for intentionally interfering, on the basis of race, with another's right to make and enforce contracts." McClease v. R.R. Donnelley & Sons Co.,  226 F.Supp.2d 695, 699 (E.D.Pa. 2002)(citing Pryor v. Nat'l Collegiate Athletic Ass'n, 153 F.Supp.2d 710, 718 n. 8 (E.D.Pa. 2001), rev'd in part on other grounds, 288 F.3d 548 (3d Cir. 2002); Cimino v. Delaware Dept. of Labor, No. 01-458, 2002 WL 265095 (D. Del. Feb. 25, 2002))(emphasis added).  Defendants next argue that because Plaintiff signed a document acknowledging that his employment remained "at will," he cannot state a claim under § 1981.  See Def. Ex. 1.  This is not necessarily so.  See McClease, 226 F.Supp.2d at 700 (noting that "five federal courts of appeals have held that at-will employment constitutes a 'contract' within the meaning of Section 1981, but they have taken very different routes to this conclusion.").

24

However, the parties undertook only limited analysis regarding Plaintiff's allegation that an implied contract existed.  Thus, the Court will require the parties to brief this issue.  The parties should submit their briefs by the deadline listed in the Order accompanying this Opinion.

**E.    State Contract Claims**

In Counts Six and Seven of his proposed Amended Complaint, Plaintiff states claims for breach of contract and breach of the covenant of good faith and fair dealing.  The Court notes at the outset that DRBA appears to be amenable to suit based on contract claims:

> Whereas the Compact is completely silent as to the applicability of the states' whistle-blower-protection and antidiscrimination statutes to the DRBA, it expressly authorizes the Authority to "enter into contracts and agreements with ... any individual ... deemed necessary or advisable for the exercise of its purposes and powers," N.J.S.A. 32:11E-1, Art. VII, and contains a provision that has long been recognized as a sue-and-be-sued clause.  See [DRBA v. Int'l Org. of Masters, Mates, & Pilots, 45 N.J. 138, 147 (1965)] (citing N.J.S.A. 32:11E-1, Art. VII).

Spence-Parker, 616 F.Supp.2d at 521-22 (footnote omitted); see also Chafin, 2006 WL 3780765, at *7 ("It would be a perverse rule of law if the authority was empowered to enter into contracts without being held accountable under the law of contracts.").

Defendants, however, argue that Plaintiff had no contract with DRBA.  Plaintiff alleges that he "had an implied contract

25

for re-employment for the 2010 season, created by defendant Gillespie's promise that plaintiff would be 'more than welcome' to return to work, as well as the DRBA's decision to send plaintiff and application for re-employment." FAC ¶ 37. Plaintiff submitted that application, but DRBA never responded to Plaintiff. FAC ¶¶ 15-16.

Because Plaintiff sought to add his contract claims after Defendants moved to dismiss, the parties have undertaken only limited analysis regarding Plaintiff's allegation that an implied contract existed. Thus, the Court will require the parties to brief the viability of Plaintiff's claim for breach of implied contract given that DRBA would be amendable to a breach of contract claim. The parties should submit their briefs by the deadline listed in the Order accompanying this Opinion.

## IV. CONCLUSION

For the aforementioned reasons, Defendants' motion to dismiss, or in the alternative for summary judgment, is granted, in part, denied, in part, and reserved in part. Plaintiff's motion to amend is granted, in part, and denied, in part. Counts One and Two of Plaintiff's Amended Complaint, stating claims pursuant to New Jersey's LAD, are dismissed with prejudice. Defendants' motion is denied as to Count Three. Count Four of Plaintiff's Amended Complaint, stating a claim against DRBA

26

pursuant to § 1983, is dismissed without prejudice.  The Court requires further briefing as to the viability of Plaintiff's claims involving the allegation of an implied contract, stated in Counts Five, Six and Seven of his Amended Complaint.

Dated: <u>July 26, 2011</u>            <u>s/Renée Marie Bumb</u>
                                   RENÉE MARIE BUMB
                                   UNITED STATES DISTRICT JUDGE